## A03A2314. WILSON v. CITY OF SARDIS et al.

(590 SE2d 383)

PHIPPS, Judge.

Edgebert Wilson was chief of police for the City of Sardis until his employment was terminated by the mayor and city council. Wilson brought this action for wrongful termination of employment and tortious interference with business relations against the city, as well as the mayor and city council members in their individual and official capacities. Wilson appeals the trial court's grant of defendants' motion for summary judgment. We affirm.

To prevail at summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.[1] "If there is no evidence sufficient to create a genuine issue as to any essential element of plaintiff's claim, that claim tumbles like a house of cards. All of the other disputes of fact are rendered immaterial. [Cit.]"[2]

The following facts are undisputed:

Tessa Johnson sought employment as a full-time police officer for the City of Sardis. Although no openings were available, the city council authorized Johnson to serve as a reserve officer, and the council agreed for the city to sponsor her at the police academy so that she could become certified as a full-time officer. Wilson testified that when he called the Peace Officer Standards and Training Council (POST) to discuss Johnson's application to the academy, the secretary instructed him to state on the application that Johnson was a full-time police officer even though he had told her of Johnson's actual status. Wilson complied.

After finishing the training course, Johnson accepted a job offer from the City of Millen Police Department. When the City of Sardis received an $1,800 bill from POST for Johnson's training, Johnson was asked to pay the bill, but she failed to do so. The Millen Police Department was then asked to pay the bill. It refused because Wilson had misrepresented Johnson's employment status in the POST application in order to make her eligible for reimbursable training. Wilson later applied for the position of chief of police of the City of Harlem. Shortly thereafter, he was informed by the mayor of Sardis that the city council might ask for his resignation for falsifying Johnson's POST application. A member of the city council also informed Wilson that another councilman had contacted someone in Harlem to discuss his employment application there. The City of Harlem later chose someone other than Wilson as its chief of police.

---

[1] OCGA § 9-11-56 (c).

[2] *Erickson v. Hodges*, 257 Ga. App. 144, 146 (570 SE2d 420) (2002).

Following a public hearing, the Sardis mayor and city council voted to terminate Wilson as its chief of police. The reason given was he had falsified Johnson's POST application and thereby exposed the city to monetary liability, even though he had agreed to pay the $1,800 fee to avoid losing his job. The city's termination of Wilson as its chief of police led to an investigation by POST. Finding only slight negligence by Wilson, POST allowed him to retain his status as a certified police officer and penalized him by imposing a one-year suspension of his certification retroactive to the date he was terminated by the Sardis City Council.

In his complaint, Wilson charged the mayor and various council members with tortious interference with the business relationship between himself and the city. Wilson also charged the city with wrongful termination of his employment. Wilson requested damages, jointly and severally, from all defendants.

Defendants moved for summary judgment on grounds that, under the undisputed facts, Wilson was not entitled to recovery on any of his claims and that they were shielded from suit by either sovereign or official immunity. The trial court granted defendants' motion. We find no error.

1. Under Georgia law,

> a public employee has a property interest in employment when that employee can be fired only for cause. [Cits.] . . . In the absence of a contractual or statutory "for cause" requirement, however, the employee serves "at will" and may be discharged at any time for any reason or no reason, with no cause of action for wrongful termination under state law. [Cits.] Such "at will" employees have no legitimate claim of entitlement to continued employment and, thus, have no property interest protected by the due process clause. [Cit.][3]

Because Wilson's employment by the city was undisputably terminable at will, his termination does not give rise to a cause of action for an alleged wrongful termination.[4]

2. To recover under a theory of tortious interference with business relations,

> a plaintiff must show defendant: (1) acted improperly and without privilege, (2) acted purposely and with malice with the intent to injure, (3) induced a third party or parties not

---

[3] *Duck v. Jacobs*, 739 FSupp. 1545, 1548 (S.D. Ga. 1990).
[4] *Miles v. Bibb Co.*, 177 Ga. App. 364 (1) (339 SE2d 316) (1985).

to enter into or continue a business relationship with the plaintiff, and (4) caused plaintiff financial injury. [Cit.][5]

It is uncontroverted that the mayor and city council members acted within their authority in discharging Wilson as chief of police. Therefore, Wilson's theory of tortious interference with business relations fails "because neither [the mayor] nor [the members of the city council were] third part[ies] unauthorized to discharge an employee. [Cits.]"[6]

3. Wilson also asserts that he has a claim against the defendants for unlawful interference with his prospective business relations with the City of Harlem. But he did not assert such a claim in his pleadings. Moreover, the evidence presented by Wilson shows only that a Sardis city councilman telephoned the City of Harlem to ask whether Wilson was applying for the position of its chief of police. No evidence was presented as to the identity of the person with whom the council member spoke, the substance of the conversation, or the reason the City of Harlem decided not to employ Wilson as its chief of police. Consequently in this case, as in *Higginbotham v. Harden*,[7] no unlawful interference with prospective employment has been shown.

A cause of action for tortious interference with business relations encompasses interference with a prospective business relationship as well as existing ones. . . . But to establish a cause of action for interference with prospective business relations, plaintiff must demonstrate that absent the interference, those relations were reasonably likely to develop in fact. [Cit.][8]

4. Wilson correctly argues that damage to reputation sustained in connection with a termination of at-will employment may give rise to a claim for deprivation of liberty without due process.[9] But it is undisputed that Wilson was afforded a public hearing before his employment was terminated, and in his pleadings below he asserted no claim for violation of his due process rights.

5. The remaining issues in this case are moot.

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

---

[5] (Emphasis omitted.) *Renden, Inc. v. Liberty Real Estate*, 213 Ga. App. 333, 334 (2) (444 SE2d 814) (1994).

[6] *Miles v. Bibb Co.*, supra, 177 Ga. App. at 365.

[7] 137 Ga. App. 143, 144 (2) (223 SE2d 156) (1975).

[8] *Renden, Inc. v. Liberty Real Estate*, supra, 213 Ga. App. at 334-335.

[9] See *Campbell v. Pierce County*, 741 F2d 1342, 1344 (11th Cir. 1984).

DECIDED NOVEMBER 14, 2003.

*Samuel W. Cruse*, for appellant.
*Grunewald & Grunewald, Edward J. Grunewald*, for appellees.