Kelvin J. COCHRAN, Plaintiff,

v.

CITY OF ATLANTA, Georgia and Mayor Kasim Reed, in his individual capacity, Defendants.

CIVIL ACTION NO. 1:15-CV-0477-LMM

United States District Court, N.D. Georgia, Atlanta Division.

Signed December 16, 2015

David Andrew Cortman, J. Matthew Sharp, Rory Thomas Gray, Alliance Defending Freedom, Lawrenceville, GA, Garland Raphael Hunt, Hunt & Associates, Alpharetta, GA, Jeremy D. Tedesco, Jonathan A. Scruggs, Kevin Hayden Theriot, Alliance Defense Fund, Scottsdale, AZ, Jonathan Dean Crumly, Sr., Maner Crumley Chambliss, LLP, Atlanta, GA, for Plaintiff.

Robert N. Godfrey, Timothy M. Boughey, Y. Soo Jo, City of Atlanta Law Department, Atlanta, GA, for Defendants.

### ORDER

#### LEIGH MARTIN MAY, UNITED STATES DISTRICT JUDGE

This case comes before the Court on Defendants City of Atlanta, Georgia, and Mayor Kasim Reed's Motion to Dismiss [11]. Following a review of the record, a hearing on the matter, and due consideration, the Court enters the following Order.

### I. *Factual Background*

The facts relied upon in this Order are taken from the Complaint. As required on a motion to dismiss, the Court has accepted all facts pleaded therein as true and has viewed all inferences in a light most favorable to Plaintiff. The facts recited in the following paragraphs are those directly from the Complaint.

Plaintiff Kelvin J. Cochran worked as the Fire Chief of the Atlanta Fire and Rescue Department ("AFRD") beginning in 2008. Compl., Dkt. No. [1] ¶ 51. In 2009, Plaintiff left the AFRD to serve as Administrator of the United States Fire Administration in Washington, D.C., but he returned ten months later. *Id.* ¶¶ 52, 570. Plaintiff remained the Fire Chief of AFRD until January 6, 2015. *Id.* ¶ 59.

Plaintiff is also a devout evangelical Christian and is a member and Deacon at Elizabeth Baptist Church in Atlanta, Georgia. *Id.* ¶¶ 23, 67–68. In late 2013, Plaintiff wrote and self-published a book entitled *Who Told You That You Were Naked?: Overcoming the Stronghold of Condemnation. Id.* ¶¶ 91–92. The book was inspired by a men's Bible study at Plaintiff's church, which included a unit on God's question to Adam, "Who told you that you were naked?" *Id.* ¶ 83–85. The book was written primarily for men and is intended to help them fulfill God's purpose for their lives. *Id.* ¶ 93. According to the Plaintiff, the primary goal of the book is to guide men on how to overcome the stronghold of condemnation, to walk in the fullness of salvation, and to live a faith-filled, virtuous life. *Id.* ¶ 94. The book includes passages indicating that sex outside of the confines of marriage between a man and

woman—including fornication, homosexual acts, and all other types of non-marital sex—is contrary to God's will. *Id.* ¶¶ 95–96, 100. The Complaint alleges this teaching is consistent with the Bible and historic Christian teaching. *Id.* ¶ 99.

When Plaintiff set out to write the book, he contacted Nina Hickson, the City of Atlanta Ethics Officer and asked whether a currently serving city official could write a non-work-related, faith-based book. *Id.* ¶¶ 105–06. Ms. Hickson responded that he could write the book, so long as the subject matter of the book was not the city government or fire department. *Id.* ¶ 108. When Plaintiff was close to completing the book, he asked Ms. Hickson whether he could state he was Atlanta's Fire Chief in the "About the Author" section, and she responded in the affirmative. *Id.* ¶¶ 110–11. Therefore, Plaintiff included a phrase in that section stating he "is currently serving as Fire Chief of the City of Atlanta Fire Rescue Department (GA)." *Id.* ¶ 112.

In January 2014, after the book was published, Plaintiff provided copies of the book to City of Atlanta Mayor Kasim Reed and three Atlanta City Council members. *Id.* ¶¶ 117–23. He also gave copies of the book to 10 AFRD employees he contends were Christians, knew he was writing the book, and had requested to receive copies of it upon completion. *Id.* ¶ 127. He subsequently gave away copies to a few AFRD employees as a free gift, to 3–5 employees who requested a copy, and to 3 employees who had previously shared their Christian faith with him. *Id.* ¶¶ 126, 128–30. The last time Plaintiff gave a free copy of the book to an AFRD employee was in October 2014. *Id.* ¶ 133. Plaintiff did not convey to any AFRD employees who received his book that reading or following the teachings of his book was in any way relevant to their status or advancement within AFRD. *Id.* ¶ 135.

In November 2014, an AFRD member apparently showed the passages of the book concerning its views on sexual morality to City Councilmember Alex Wan and told Councilmember Wan that the passages were contrary to his beliefs on the subject. *Id.* ¶¶ 138–39, 141. This complaint to Councilmember Wan precipitated discussion of the matter among the City's upper management. *Id.* ¶¶ 142–44. The consensus of that discussion was that a meeting with Mayor Reed was necessary and that a recommendation would be made for Plaintiff's termination. *Id.* ¶ 144. On November 24, 2014, Plaintiff received a letter from the City advising him that he was suspended for 30 days without pay. *Id.* ¶¶ 145, 148. The letter stated that Plaintiff's suspension was due to his "performance of an action that constitutes a 'cause of action' as outlined in Section 114–528 of the Code of Ordinances City of Atlanta." *Id.* ¶ 150. Section 114–528(b) provides 21 ways in which a City employee can commit a "cause of action," but the City's letter did not provide any details regarding the grounds for Plaintiff's suspension. *Id.* ¶¶ 149, 151–53.

Plaintiff contends that he was suspended because of the religious views expressed in his book. *Id.* ¶ 146. In a statement issued November 24, 2014, concerning Plaintiff's suspension, Mayor Reed stated that he "was surprised and disappointed to learn of this book on Friday." *Id.* ¶ 154. Specifically, Mayor Reed stated "I profoundly disagree with and am deeply disturbed by the sentiments expressed in the paperback regarding the LGBT community," and "I want to be be clear that the material in Chief Cochran's book is not representative of my personal beliefs, and is inconsistent with the Administration's work to make Atlanta a more welcoming city for all of her citizens—regardless of their sexual orientation, gender, race and religious be-

liefs." *Id.* ¶¶ 157–58. Mayor Reed's Facebook page stated that "the contents of the book do not reflect the views of Mayor Reed or the Administration." *Id.* ¶ 159. City Councilmember Wan made a statement to the Atlanta Journal Constitution that "I respect each individual's right to have their own thoughts, beliefs and opinions, but when you're a city employee, and those thoughts, beliefs and opinions are different from the city's, you have to check them at the door." *Id.* ¶ 167.

On January 6, 2015, the day Plaintiff's unpaid suspension ended, the City fired Plaintiff. *Id.* ¶ 169. Plaintiff has never been accused of discriminating against anyone based on race, gender, sexual orientation, or any other protected characteristic. *Id.* ¶ 168. Plaintiff contends that he complied with all Atlanta Ordinances and policies, including Section 2–820(d), which provides that City department heads, *inter alia,*

> shall not engage in any private employment or render any services for private interests for remuneration, regardless of whether such employment or service is compatible with or adverse to the proper discharge of the official duties of such employee. However, [department heads] may engage in private employment or render services for private interests only upon obtaining prior written approval from the board of ethics.

*Id.* ¶¶ 170–71. Plaintiff alleges Section 2–820(d) does not apply to an employee's self-publication of a non-work-related, religious book. *Id.* ¶ 172.

Plaintiff asserts nine claims under 42 U.S.C. § 1983 against the City of Atlanta and Mayor Reed for violation of his constitutional rights. Specifically, Plaintiff's claims are for violation of the First Amendment right to freedom of speech: retaliation (Count I); violation of the First Amendment right to freedom of speech:

viewpoint discrimination, overbreadth, prior restraint and unbridled discretion, and unconstitutional conditions (Count II); violation of the First Amendment right to the free exercise of religion and the No Religious Tests clause of Article VI, ¶ 3 of the Constitution (Count III); violation of the First Amendment right to freedom of association (Count IV); violation of the First Amendment right to avoid religious hostility: establishment (Count V); violation of the Fourteenth Amendment right to equal protection of the laws (Count VI); violation of the Fourteenth Amendment right to due process: vagueness (Count VII); violation of the Fourteenth Amendment right to due process: liberty interest (Count VIII); violation of the Fourteenth Amendment right to due process: procedure (Count IX). Defendants move to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). Defs.' Mot. to Dismiss, Dkt. No. [11] at 1.

## II. *Legal Standards*

Defendants generally invoke Federal Rule of Civil Procedure 12(b)(6) as the basis for their motion to dismiss. However, one of Defendants' grounds for dismissal is lack of standing pursuant to Article III, which is a challenge to subject matter jurisdiction under Rule 12(b)(1). *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.,* 524 F.3d 1229, 1232 (11th Cir. 2008) (quoting *Cone Corp. v. Fla. Dep't of Transp.,* 921 F.2d 1190, 1203 n. 42 (11th Cir.1991)).

A complaint may be dismissed under a Rule 12(b)(6) motion to dismiss if the facts as pled do not state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."); *Bell Atl.*

*Corp. v. Twombly,* 550 U.S. 544, 561–62, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (retiring the prior standard from *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), which provided that in reviewing the sufficiency of a complaint, the complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."). In *Iqbal,* the Supreme Court reiterated that although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937.

In *Twombly,* the Supreme Court emphasized that a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555, 127 S.Ct. 1955. Factual allegations in a complaint need not be detailed, but "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations and emphasis omitted). A complaint is plausible on its face when it provides the factual content necessary for "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937.

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may be based on a facial or factual challenge to the complaint. *McElmurray v. Consol. Gov't of Augusta–Richmond Cty.,* 501 F.3d 1244, 1251 (11th Cir.2007) (citing *Williamson v. Tucker,* 645 F.2d 404, 412 (5th Cir.1981)). A facial attack "requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction," and for purposes of the motion, Plaintiff's allegations in the complaint are taken as true. *McElmurray,* 501 F.3d at 1251 (quoting *Lawrence v. Dunbar,* 919 F.2d 1525, 1529 (11th Cir.1990)) (alterations omitted). To the contrary, a factual attack challenges "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered." *McElmurray,* 501 F.3d at 1251 (quoting *Lawrence,* 919 F.2d at 1529).

The Court also notes that its consideration of issues on a 12(b)(6) motion is limited to the well-supported reasons articulated by Defendants in their briefing. *See* LR 7.1A(1), NDGa ("Every motion presented to the clerk for filing shall be accompanied by a memorandum of law which cites supporting authority."). In other words, the Court will only address the narrow issues Defendants raise in their briefing. With this framework in mind, the Court turns to the analysis.

### III. *Analysis*

Plaintiff alleges that Defendants are liable under 42 U.S.C. § 1983 for violating his First and Fourteenth Amendment rights. To prevail in a civil rights action under Section 1983, "a plaintiff must make a prima facie showing of two elements: (1) that the act or omission deprived plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States, and (2) that the act or omission was done by a person acting under color of law." *Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir.1993) (quoting *Bannum, Inc. v. City of Ft. Lauderdale,* 901 F.2d 989, 996–97 (11th Cir.1990)).

Defendants move to dismiss all of Plaintiff's Section 1983 claims arguing that Plaintiff has failed to show he was de-

prived of a constitutional right. Defendants also contend that Counts I, II, and IV against Mayor Reed should be dismissed because he is entitled to qualified immunity. The Court will address each alleged constitutional violation in turn before making a determination regarding qualified immunity.

## A. Count I: Retaliation

In his first count, Plaintiff alleges Defendants terminated him in retaliation for exercising his First Amendment right to free speech. Compl., Dkt. No. [1] at 26–30. Defendants move to dismiss this claim on the grounds that Plaintiff's speech did not involve a matter of public concern and his free speech interests were outweighed by the City's interest as a governmental employer. Defs.' Mot. to Dismiss, Dkt. No. [11] at 6–10.

A public employer may not terminate a public employee in retaliation for speech protected by the First Amendment. *Alves v. Bd. of Regents,* 804 F.3d 1149, 1158 (11th Cir.2015) (citing *Bryson v. City of Waycross,* 888 F.2d 1562, 1565 (11th Cir.1989)). Although a citizen "must accept certain limitations on [his] freedom" upon entering government service, *id.* (quoting *Garcetti v. Ceballos,* 547 U.S. 410, 418, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006)) (alterations in original omitted), he does not "relinquish the First Amendment rights [he] would otherwise enjoy as a citizen to comment on matters of public interest." *Id.* (quoting *Pickering v. Bd. of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)) (alteration in original omitted). Therefore, the goal is to "arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public ser-

vices it performs through its employees." *Pickering,* 391 U.S. at 568, 88 S.Ct. 1731.

The Supreme Court employs a four-part test, based on *Pickering* and its progeny, to determine whether a public employee states a claim for retaliation in violation of the First Amendment. *Cook v. Gwinnett Cty. Sch. Dist.,* 414 F.3d 1313, 1318 (11th Cir.2005). The employee must first show that he spoke "as a citizen on a matter of public concern." *Garcetti,* 547 U.S. at 418, 126 S.Ct. 1951. If this requirement is satisfied, the Court then weighs the employee's First Amendment interests against the interest of the governmental entity, as an employer, "in promoting the efficiency of the public services it performs through its employees." *Pickering,* 391 U.S. at 568, 88 S.Ct. 1731. Both of these inquiries are questions of law. *Cook,* 414 F.3d at 1318. If the employee's interests outweigh the government's interests, a fact-finder must then determine whether the employee's speech played a substantial part in the government's decision to discharge the employee and whether the government would have reached the same decision absent the protected speech. *Id.*

Defendants' Motion to Dismiss concerns only the first two steps of the analysis: (1) whether the speech at issue relates to a matter of public concern and (2) whether the City's interest in restricting that speech outweighed Plaintiff's First Amendment interests.

### 1. Public Concern

In making the public concern determination, the Court examines " 'the content, form, and context' of the speech, 'as revealed by the whole record.' " *Carter v. City of Melbourne,* 731 F.3d 1161, 1168 (11th Cir.2013) (quoting *Connick v. Myers,* 461 U.S. 138, 147–48, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)). A public employee's speech involves a matter of public concern

if it can "be fairly considered as relating to any matter of political, social, or other concern to the community." *Cook*, 414 F.3d at 1319 (quoting *Connick*, 461 U.S. at 146, 103 S.Ct. 1684). The Supreme Court has explained that public concern "is something that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication." *City of San Diego v. Roe*, 543 U.S. 77, 83–84, 125 S.Ct. 521, 160 L.Ed.2d 410 (2004). A citizen's comment on a matter of public concern is distinguished from an "employee['s] comment on matters related to personal status in the workplace." *United States v. Nat'l Treasury Emps. Union (NTEU)*, 513 U.S. 454, 466, 115 S.Ct. 1003, 130 L.Ed.2d 964 (1995).

■ Defendants argue that Plaintiff's book was unrelated to a matter of public concern because it "began as a Bible study for his men's church group .... [and] Plaintiff's own description of the book shows a narrow target audience and limited purpose" of helping Christian men fulfill God's purpose for their lives. Defs.' Mot. to Dismiss, Dkt. No. [11] at 7. The Court finds this argument unconvincing because the speech at issue also addresses matters of political and social concern.[1]

Plaintiff alleges he was terminated because he stated in his book that (1) God intended marriage to exist exclusively between a man and a woman, and (2) homosexual conduct is immoral. When Plaintiff's book was published in 2013, the issue of marriage—specifically, how "marriage" should be defined—was of political and social significance because of the disparity between the states and the federal government in recognizing same-sex marriages. *See, e.g., United States v. Windsor*, —— U.S. ——, 133 S.Ct. 2675, 186 L.Ed.2d 808 (2013) (holding federal law defining marriage only as a legal union between a man and a woman unconstitutional). Issues concerning same-sex marriage are frequently the subject of political and social commentary.[2]

In addition, the form of Plaintiff's speech, a self-published book which is publicly sold at Amazon.com, supports the inference that Plaintiff desired to share his findings and views with the public. Plaintiff alleges that he wrote the book at home during his personal time, which also favors a finding that Plaintiff spoke as a citizen on a matter of public concern, as opposed to an employee voicing grievances in the workplace. Compl., Dkt. No. [1] ¶¶ 86–91. Furthermore, Plaintiff's allegations as to the book's content do not relate to his duties and opinions about the AFRD; therefore, this factor weighs in favor of finding public concern.

Based on the "content, form, and context" of Plaintiff's speech, *Connick*, 461

---

1. The circuits are split as to whether speech is necessarily a comment on a matter of public concern when the content of the speech is religious expression. *Compare Tucker v. Cal. Dep't of Educ.*, 97 F.3d 1204, 1210 (9th Cir. 1996) (holding state department of education order banning all religious advocacy in the workplace unconstitutional, concluding that "the speech is religious expression and it is obviously of public concern.") *with Daniels v. City of Arlington*, 246 F.3d 500, 504 (5th Cir. 2001) (holding police officer's act of wearing a small gold cross pin on his uniform was not public-concern based, in part, on determination that "[t]he content of his speech—symbolic conveyance of his religious beliefs—is intensely personal in nature"). The Court need not decide whether religion, in itself, is a public concern because Plaintiff's speech falls into the protected category of comment on a "matter of political [and] social ... concern to the community." *Connick*, 461 U.S. at 146, 103 S.Ct. 1684.

2. In fact, the press coverage that this case continues to receive supports a finding that the speech involves an issue of public concern.

U.S. at 147, 103 S.Ct. 1684, as alleged in the Complaint, Plaintiff sufficiently pleads that his speech addressed a matter of public concern. *See NTEU*, 513 U.S. at 466, 115 S.Ct. 1003 (holding public employees' speech protected as comments on matters of public concern where "[t]he speeches and articles for which they received compensation in the past were addressed to a public audience, were made outside the workplace, and involved content largely unrelated to their government employment.").

### 2. *Pickering Balancing*

■ Because Plaintiff adequately pleads that his book addressed a matter of public concern, *Pickering* requires the Court to balance Plaintiff's First Amendment interests against the City's interest "in promoting the efficiency of the public services it performs...." *Pickering*, 391 U.S. at 568, 88 S.Ct. 1731. Defendants argue that as a paramilitary organization, the AFRD has a "need to secure discipline, mutual respect, trust and particular efficiency among the ranks due to its status as a quasi-military entity different from other public employers." Defs.' Mot. to Dismiss, Dkt. No. [11] at 9 (quoting *Anderson v. Burke Cty.*, 239 F.3d 1216, 1222 (11th Cir.2001)). Defendants therefore claim that Plaintiff's interest in publishing and distributing a book "containing moral judgments about certain groups of people that caused at least one AFRD member enough concern to complain to a City Councilmember" cannot outweigh the Defendants' interests in securing discipline and efficiency. Defs.' Mot. to Dismiss, Dkt. No. [11] at 9–10.

However, at the motion to dismiss stage, the Court may consider only Plaintiff's facts as alleged in the Complaint to determine the parties' interests. Plaintiff pleads that his book did not threaten the City's ability to administer public services and was not likely to do so. Compl., Dkt. No. [1] ¶ 231. He further alleges that his book did not interfere with the AFRD's internal operations or with internal order and discipline, and that he did not convey to anyone that received his book that complying with its teachings or even reading the book "was in any way relevant to their status or advancement within AFRD." *Id.* ¶¶ 135, 232. Based on the facts as pled and taking the facts most favorable to Plaintiff, the Court cannot find that Defendants' interests outweigh Plaintiff's First Amendment freedom of speech interests. However, the factual development of this case may warrant a different conclusion.

### B. Count II: Viewpoint Discrimination, Overbreadth, Prior Restraint, Unbridled Discretion, and Unconstitutional Conditions

In Count II, Plaintiff alleges that Defendants engaged in viewpoint discrimination by terminating him for expressing a viewpoint contrary to same-sex marriage and the morality of homosexual conduct, while allowing other, similarly-situated City employees to express viewpoints supportive of same-sex marriage and homosexual conduct. Compl., Dkt. No. [1] ¶¶ 251–53. Plaintiff also contends that Defendants' policies, including Section 2–820(d),[3] (1) are substantially overbroad to the extent they forbid employees from engaging in protected speech; (2) constitute prior restraints on speech by censuring speech

---

**3.** At the hearing on this matter, Plaintiff's counsel clarified that Plaintiff's claims challenging Section 2–820(d) are asserted in the alternative to his claims alleging Defendants terminated him for expressing views against same-sex marriage. Essentially, Plaintiff contends that (1) he was fired because of what he wrote, but if not, then (2) he was fired for publishing a book without the City's prior written approval.

before it occurs;[4] and (3) provide unbridled discretion to Defendants because there are no objective guidelines for prior approval decisions. *Id.* at 32–35.

Defendants assert that Count II is "essentially a challenge to the constitutionality of the City of Atlanta Code of Ordinances Sec. 2–820(d) requiring department heads to obtain prior written approval from the Board of Ethics before engaging in the provision of services for private interests for remuneration." Defs.' Mot. to Dismiss, Dkt. No. [11] at 10. Defendants' only argument for dismissing Count II is that Plaintiff does not have standing to challenge Section 2–820(d) because he did not seek written approval from the Board of Ethics (and thus was not injured by that provision).[5] *Id.* at 10–12.

### 1. *Applicable Legal Standard*

A motion to dismiss for lack of standing is a challenge to subject matter jurisdiction under Rule 12(b)(1). *Stalley,* 524 F.3d at 1232. Here, Defendants assert a facial challenge, alleging Plaintiff has not sufficiently pleaded a basis for subject matter jurisdiction. Defs.'s Mot. to Dismiss, Dkt. No. [11] at 12. For purposes of evaluating a facial challenge to subject matter juris-

diction, Plaintiff's allegations in the Complaint must be accepted as true. *McElmurray,* 501 F.3d at 1251.

Article III of the Constitution gives the federal courts authority to adjudicate "Cases" and "Controversies." U.S. Const. art. III, § 2. To establish that a case or controversy exists, the party invoking the power of the court must show (1) injury in fact, which is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical;" (2) a causal connection between the injury and the conduct complained of; and (3) that the injury is likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal citations omitted). A plaintiff shows an injury in fact at the pleading stage through general factual allegations that "he personally has suffered some actual or threatened injury." *CAMP Legal Defense Fund, Inc. v. City of Atlanta,* 451 F.3d 1257, 1269 (11th Cir.2006) (quoting *Granite State Outdoor Adver., Inc. v. City of Clearwater,* 351 F.3d 1112, 1117 (11th Cir.2003)). In addition to the constitutional standing re-

---

**4.** Defendants concede that Plaintiff has standing to bring a facial, prior restraint claim. Hr'g Tr., Dkt. No. [38] at 26:6–12 ("THE COURT: So there's a prior restraint claim that has an "as applied" challenge, which I understand, but the facial challenge, if they're challenging the facial application of this particular statute, why is there no standing in terms of that application? MR. GODFREY: If it's—if you're simply looking at it as a facial challenge, then, yes, of course he has standing to challenge it on a facial challenge basis.").

**5.** At the hearing, defense counsel argued that he understood Plaintiff's allegations of viewpoint discrimination to be part of his prior restraint claim, which challenges Section 2–820(d). However, defense counsel conceded that if Plaintiff's viewpoint discrimination claim is not related to Section 2–820(d), then

Defendants are not challenging Plaintiff's standing. A review of the Complaint shows no reference to Section 2–820(d) or prior written approval in the paragraphs alleging viewpoint discrimination. Compl., Dkt. No. [1] ¶¶ 249–54. Instead, Plaintiff alleges Defendants discriminated against him based on his viewpoint by firing him for the *content* of his book, not for failing to get prior written approval before publishing the book. *Id.* ¶ 252 ("Defendants terminated Cochran because of his expression of a religious belief and religious viewpoint contrary to same-sex marriage ... "). Because Plaintiff's viewpoint discrimination claim does not implicate Section 2–820(d), Defendants' standing argument—based solely on that ordinance—does not apply.

quirements of Article III; the Supreme Court has imposed prudential standing limitations. *Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 955, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984). One of those limitations prohibits a plaintiff from asserting the legal rights and interests of third parties. *Id.*

### 2. *Injury in Fact*

■ Defendants summarily argue that Plaintiff does not have standing for any of his First Amendment overbreadth, prior restraint, and unbridled discretion claims because he has not suffered an actual or concrete injury under *Lujan* and its progeny. Defs.' Mot. to Dismiss, Dkt. No. [11] at 11 ("The overbreadth doctrine does not relieve a plaintiff of the burden to prove constitutional standing, which requires that 'the plaintiff himself has suffered some *threatened or actual injury* resulting from the putatively illegal action.'" (quoting *CAMP*, 451 F.3d at 1269)) (emphasis added); Defs.' Mot. to Dismiss, Dkt. No. [11] at 11 ("*A plaintiff who has established constitutional injury* under a provision of a statute *as applied to his set of facts* [who] may also bring a facial challenge under the overbreadth doctrine, to vindicate the rights of others not before the court under that provision.'" (quoting *CAMP*, 451 F.3d at 1271)) (emphasis in original). Defendants do not address each claim individually, but rather generally argue that because Plaintiff failed to apply for or receive written approval from the Board of Ethics under City of Atlanta Code of Ordinances Section 2–820(d), he did not suffer an injury under the Ordinance with respect to Count II. Defs.' Mot. to Dismiss, Dkt. No. [11] at 10–11.

In response to Defendants' standing challenge, Plaintiff argues that one of the grounds for firing him was his failure to comply with Section 2–820(d), thus the ordinance applied to him and caused his injury. Pl.'s Resp. to Defs.' Mot. to Dismiss, Dkt. No. [15] at 21. Plaintiff contends that this gives him standing to challenge Section 2–820(d), both as-applied and on its face. *Id.*

The Complaint alleges Plaintiff was suspended and subsequently fired from his job as Atlanta's Fire Chief for failing to comply with Section 2–820(d), *inter alia*, notwithstanding the fact that he received oral permission from the Department of Ethics to publish the book. Compl., Dkt. No. [1] ¶¶ 105–08, 148, 169, 317, 319–20. And Defendants concede that Plaintiff alleges as much in his Complaint. Defs.' Mot. to Dismiss, Dkt. No. [11] at 25 ("Plaintiff cannot show that *terminating a high-ranking public official for failure to comply with an ordinance* requiring pre-approval for outside employment was a violation of clearly established rights at the time of his termination.") (emphasis added); Hr'g Tr., Dkt. No. [38] at 25:17–19 ("Mr. Godfrey: I see him as going after the ordinance in all its ramifications and saying, I'm challenging this ordinance because the ordinance resulted in my being discharged."). These facts, accepted as true, show that Plaintiff suffered an actual, concrete injury.

In their Reply, Defendants provide a block quote from *CAMP*—without providing any argument—which they claim requires this Court to find Plaintiff did not suffer an injury. Defs.' Reply, Dkt. No. [19] at 8 (citing *CAMP*, 451 F.3d at 1269). In *CAMP*, the plaintiff sued the City of Atlanta, alleging that certain permitting requirements were unconstitutional for various reasons under the First Amendment, both facially and as applied. In addressing the plaintiff's prior restraint claim, the Eleventh Circuit held the following (which Defendants block-quoted in their Reply):

CAMP lacks standing to challenge two of the five provisions as prior restraints.

CAMP failed to present evidence that it has, or imminently will be, denied a permit for failure to pay fees or perform a cleanup plan. *See id.* § 138–207(b)(7), (8). CAMP also presented no evidence, "by affidavit or other evidence," that these provisions apply to the permits it seeks. *See Lujan*, 504 U.S. at 560, 112 S.Ct. at 2136. Because the record does not evidence an "actual or imminent" injury from these provisions, CAMP lacks standing to challenge them, and we lack jurisdiction to consider them.

*CAMP*, 451 F.3d at 1276. Therefore, the Eleventh Circuit held that, because the provisions which the plaintiff sought to challenge never applied to it in the past or future—in that no permit *was* denied or was expected to be denied based on these provisions—the plaintiff was not injured by the provisions and did not have standing.

Unlike *CAMP*, where the plaintiff did not experience any injury because of the challenged permitting provision, Plaintiff has plausibly pled (albeit in the alternative) that he was suspended and fired as a result of Section 2–820(d). Because he suffered an injury as a result of Section 2–820(d) and lack of injury is the only ground on which Defendants move to dismiss Plaintiff's claims, Plaintiff has plausibly pled he was injured by Section 2–820(d). Based on the foregoing analysis, Defendants' Motion to Dismiss [11] is **DENIED** with regard to Count II.

### C. Count III: First Amendment Right to Free Exercise of Religion and Article VI No Religious Tests Clause

■ Plaintiff contends that Defendants violated his right to freely exercise his religion by terminating Plaintiff's employment because he expressed his sincerely held religious beliefs regarding marriage and sexuality.[6] Compl., Dkt. No. [1] ¶ 284. Defendants move to dismiss, citing only *Watts v. Florida International University*, 495 F.3d 1289 (11th Cir.2007). Defs. Mot. to Dismiss, Dkt. No. [11] at 12–13. Defendants argue that Plaintiff fails to state a claim because he does not plead that "his religious beliefs compelled him to publish a book about his beliefs while actively serving as the Fire Chief and without obtaining prior written approval ... [or] to distribute up to 22 copies of his book to various City of Atlanta employees...." *Id.* at 13.

■ A public employee pleads a valid free exercise claim where he alleges that "the government has impermissibly burdened one of his 'sincerely held religious beliefs.'" *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1294 (11th Cir.2007) (quoting *Frazee v. Ill. Dep't of Emp't Sec.*, 489 U.S. 829, 834, 109 S.Ct. 1514, 103 L.Ed.2d 914 (1989)). At the motion to dismiss stage, "the question is whether [a plaintiff] has alleged enough facts to ... render plausible the fact that he sincerely held the religious belief that got him fired." *Id.* at 1296.

In *Watts*, a student seeking a master's degree in social work was terminated from a practicum position for informing a counseling patient, who indicated she was Catholic, that she might find support at church. *Id.* at 1292. The Eleventh Circuit held that the student counselor pleaded a valid free exercise of religion claim where he alleged his "religious beliefs include the

---

6. Plaintiff also alleges that Defendants have effectively instituted the equivalent of a religious test for public employment in violation of the No Religious Tests Clause of Article VI, ¶ 3 of the Constitution. *Id.* ¶¶ 291–92. Defendants do not challenge this allegation. *See* Defs.' Mot. to Dismiss, Dkt. No. [11] at 12–13.

belief that a patient who professes a religion is entitled to be informed if the counselor is aware of a religious avenue within the patient's religion that will meet the appropriate therapy protocol for the patient." *Id.* at 1296. The court read that allegation to mean the student counselor's religion included the sincere belief that the patient was entitled to be informed of religious avenues for therapy. *Id.*

Defendants make no attempt to distinguish *Watts* from the present case. Defs.' Mot. to Dismiss, Dkt. No. [11] at 12–13. Instead, their argument is that Plaintiff failed to allege his religious beliefs compelled him to do the precise acts which *Defendants* contend got him fired. *Id.* at 13.

First, neither *Watts* nor *Twombly* mandate such meticulous pleading requirements. *See Watts*, 495 F.3d at 1295 ("With what specificity must sincerity be pleaded? We have held many times when discussing a Rule 12(b)(6) motion to dismiss, that 'the pleadings are construed broadly,' and that the allegations in the complaint are viewed in the light most favorable to the plaintiff ...." (quoting *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir.2006))); *Watts*, 495 F.3d at 1296 ("It is sufficient if the complaint succeeds in 'identifying facts that are suggestive enough to render the element plausible.'" (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955)) (alteration omitted).

Second, at the motion to dismiss stage, a plaintiff need only allege he sincerely held the religious beliefs that *he* contends got him fired. Defendants' argument seeks to assert the City's alleged reasons for firing Plaintiff, which are not properly before the Court on a motion to dismiss.

Defendants have failed to show how Plaintiff's Complaint is deficient based on the standard articulated in *Watts*. Plain-

tiff contends he was terminated "because he expressed his sincerely held religious beliefs regarding marriage and sexuality." Compl., Dkt. No. [1] ¶ 284. He supports this claim by alleging that he "is an evangelical Christian who holds to historic Christian beliefs" which include the teaching that "God created sexual acts for procreation and marital pleasure in holy matrimony between a man and a woman" *Id.* ¶¶ 67, 98–99. He also contends that "purs[u]ing sex outside the confines of marriage between a man and a woman—including fornication, homosexual acts, and all other types of non-marital sex—is contrary to God's will." *Id.* ¶ 100. These facts raise a plausible inference that Plaintiff sincerely held the religious beliefs that he contends were the reason for his firing. Accordingly, Defendants' Motion to Dismiss [11] is **DENIED** with regard to Count III.

### D. Count IV: First Amendment Right to Freedom of Association

Plaintiff contends that Defendants violated his right to expressive association by terminating him for expressing religious beliefs in association with his church. Compl., Dkt. No. [1] ¶ 308. Defendants move to dismiss this claim, but do not explain what legal test the Court should apply. Defs. Mot. to Dismiss, Dkt. No. [11] at 13–15. Defendants cite *McCabe v. Sharrett*, 12 F.3d 1558 (11th Cir.1994), where the Eleventh Circuit evaluated a free association claim under three separate tests without deciding which was the proper legal standard. *Id.* at 1569 ("[W]e need not decide which of the three schemes described above applies, because [defendants' actions] were justified under any of the legal standards discussed here."). Similarly, Defendants argue that Plaintiff's claim fails under all three standards: (1) the *Pickering* balancing test, (2) the *El-*

rod–*Branti* test, and (3) strict scrutiny. Defs'. Mot. to Dismiss, Dkt. No. [11] at 13–15.

Plaintiff argues that the *Pickering* balancing test is the proper test to use. Plaintiff argues that *McCabe* and its use of all three tests is inapplicable because it dealt with the right to *intimate* association, whereas Plaintiff's claim is based on a violation of his right to *expressive* association. Pl.'s Resp. to Defs.' Mot. to Dismiss, Dkt. No. [15] at 24. Plaintiff contends that his claim is similar to a public school bus driver's expressive association claim in *Cook v. Gwinnett County School District*, 414 F.3d 1313 (11th Cir.2005), where the Eleventh Circuit applied the *Pickering* balancing test. Pl.'s Resp. to Defs.' Mot. to Dismiss, Dkt. No. [15] at 24–25; *see also Cook*, 414 F.3d at 1320 ("In analyzing free association claims in this context, we ... apply the *Pickering* balancing test.").

Because Plaintiff's Complaint clearly alleges an expressive association claim, Compl., Dkt. No. [1] ¶¶ 302, 304, 306, 308, 312, 313 (referring specifically to "expressive association"), and *McCabe* "implicat[es] only the right to intimate association," 12 F.3d at 1563, the Court follows the Eleventh Circuit's determination in *Cook* that the *Pickering* balancing test applies.[7] *Cook*, 414 F.3d at 1320. However, "[i]n analyzing free association claims in [the public employment] context, [the Eleventh Circuit does] not apply the public concern portion of the *Pickering* analysis." *Id.*

As discussed above, the Court cannot engage in any meaningful *Pickering* analysis at this stage of the litigation. *See supra* at 13–14. On a motion to dismiss, the Court considers only whether the Complaint states a claim for relief on its face. Here, Plaintiff alleges that "Defendants have no rational, let alone compelling, reason for placing Cochran on leave without pay, censoring his religious speech, and terminating his employment." Compl., Dkt. No. [1] ¶ 310. Accordingly, the Court finds that Plaintiff adequately pleads a violation of his freedom of association. Accordingly, Defendants' Motion to Dismiss [11] must be **DENIED** with regard to Count IV.

### E. Count V: First Amendment Establishment Clause

In Count V, Plaintiff claims Defendants' policies and practices violate the Establishment Clause of the First Amendment, both facially and as applied to him. Compl., Dkt. No. [1] ¶ 324. Plaintiff alleges Defendants' policies and practices are hostile to religion because Defendants terminated him for expressing religious beliefs opposed to same-sex marriage and homosexual conduct, while allowing similarly-situated employees "to express secular and religious beliefs and viewpoints in favor of same-sex marriage and homosexual conduct." *Id.* ¶¶ 317–19.

Defendants argue that Plaintiff has not stated a claim under the Establishment Clause because he has not alleged "facts establishing that either Defendants' actions or [Section 2–820(d) ] constitutes an intrusion by the state into the church or vice versa." Defs.' Mot. to Dismiss, Dkt. No. [11] at 16. Defendants argue that Section 2–820(d) satisfies the three-prong test set out in *Lemon v. Kurtzman*, 403 U.S. 602, 612–13, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). Defs.' Mot. to Dismiss, Dkt. No. [11] at 16–17.

---

7. The Court also notes that the *Elrod–Branti* test applies where a public employee suffers adverse employment action because of affiliation with a certain political party, *McCabe*, 12 F.3d at 1565 (citing *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)), which Plaintiff does not allege.

In response, Plaintiff argues that Defendants have misconstrued his Establishment Clause claim, which does not allege "an intrusion by the state into the church or vice versa." Pl.'s Resp. to Defs.' Mot. to Dismiss, Dkt. No. [15] at 26. Instead, Plaintiff explains that his claim is based upon Defendants' alleged hostility towards his religious beliefs. *Id.* Plaintiff also argues that his Complaint alleges "Defendants are discriminating among religious views" by allowing speech supportive of same-sex marriage and homosexual conduct but punishing Plaintiff for his contrary views. *Id.* at 26–27. At the hearing, it became clear that although the Complaint contains an Establishment Clause claim, the exact contours of that claim, including the facts necessary to apply the *Lemon* test, are unclear. In addition, it appears that this claim may be duplicative of the other claims Plaintiff raises. Accordingly, the Court gives leave to Plaintiff to amend his Complaint on this issue.

Defendants' Motion to Dismiss [11] as to Count V is **GRANTED**. However, Plaintiff is **GRANTED** leave to amend this Count. If desired, Plaintiff should amend his Establishment Clause claim within 14 days of this Order. Failure to do so will bar Plaintiff from raising a future Establishment Clause claim. Defendants may file a subsequent Motion to Dismiss related only to this Count.

### F. Count VI: Fourteenth Amendment Right to Equal Protection of the Laws

Plaintiff asserts a claim under the Equal Protection Clause of the Fourteenth Amendment, contending that Defendants, pursuant to their policies and practices, "intentionally discriminated against [his Christian] religious belief and viewpoint by treating it differently from the speech of other similarly situated City employees, including that of Defendant Reed." Compl., Dkt. No. [1] ¶ 331. He alleges that Defendants' policies, including Section 2–820(d), and practices infringe upon his fundamental rights to freedom of speech, freedom of association, and freedom of religion. *Id.* ¶ 333.

#### 1. Legal Standard

The Equal Protection clause provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Typically, equal protection claims are based upon "governmental classifications that affect some *groups* of citizens differently than others." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601, 128 S.Ct. 2146, 170 L.Ed.2d 975 (2008) (emphasis added and citation omitted). In those cases, individuals pursuing equal protection challenges allege that they have been "arbitrarily classified as members of an identifiable group." *Id.* (citation omitted). However, the Supreme Court has recognized that an equal protection claim can, in some circumstances, be based on allegations that the plaintiff "has been irrationally singled out as a so-called 'class' of one,'" without regard for any group affiliation. *Id.* (discussing *Village of Willowbrook v. Olech*, 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000)). A class-of-one equal protection claim is one where the plaintiff alleges that he has been intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment. *Olech*, 528 U.S. at 564, 120 S.Ct. 1073.

In *Engquist*, the Supreme Court held that a public employee plaintiff may not proceed on an equal protection claim under a class-of-one theory. *Engquist*, 553 U.S. at 609, 128 S.Ct. 2146. The Court noted that broad discretion to treat individual employees differently is inherently characteristic of the employer-employee relation-

ship and does not raise equal protection concerns. *Id.* at 605, 128 S.Ct. 2146.

On the other hand, the Supreme Court explained that its holding does not affect application of the Equal Protection Clause to public employers "when the government makes class-based decisions in the employment context, treating distinct groups of individuals categorically differently." *Id.* Thus, a plaintiff may proceed on an equal protection claim against his public employer for class-based discrimination. *Id.; Glenn v. Brumby,* 632 F.Supp.2d 1308, 1313–14 (N.D.Ga.2009) (denying public employers' motion to dismiss finding plaintiff's equal protection claim was based on her membership in a class and not a class-of-one theory).

Under either a class-of-one or classic equal protection theory, because the Equal Protection Clause vindicates unequal treatment, Plaintiff must point to a similarly situated comparator. *See Watson v. Div. of Child Support Servs.,* 560 Fed.Appx. 911, 913 (11th Cir.2014) ("To state an equal protection claim, a plaintiff must demonstrate that similarly situated persons outside his protected class were treated more favorably and that the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis."); *Douglas Asphalt Co. v. Qore, Inc.,* 541 F.3d 1269, 1275 (11th Cir.2008) ("with respect to a class-of-one claim, we are obliged to apply the similarly situated requirement with rigor.").

### 2. Analysis

Defendants argue that Plaintiff's equal protection claim is based on a "class-of-one theory" and must be dismissed because Plaintiff has not identified a similarly-situated comparator. Defs.' Mot. to Dismiss, Dkt. No. [11] at 18.

Plaintiff responds that Defendants misconstrue his claim, which is not based on a "class-of-one" theory. Pl.'s Resp. to Defs.' Mot. to Dismiss, Dkt. No. [15] at 27–28. He argues that the Complaint specifically states that he is "a Christian and a member of a Christian church." *Id.* at 27 (citing Compl., Dkt. No. [1] ¶ 328). Plaintiff also contends that "he and other religious individuals who oppose same-sex marriage and the morality of homosexual conduct based upon their biblically-based beliefs" are treated differently from similarly-situated employees who have views favorable to same-sex marriage and homosexual conduct. *Id.*

The Court finds that, as pled, Plaintiff is not proceeding under a class-of-one theory. Plaintiff contends he was terminated "because of his religious belief and viewpoint against same-sex marriage and the morality of homosexual conduct" which he pleads is part and parcel of the "historic" Christian faith. Compl., Dkt. No. [1] ¶¶ 22, 67, 70, 100–01, 103, 328, 330–31. Unlike *Engquist,* Plaintiff does not plead that he was treated differently because of characteristics which are unique to him but rather because of his membership in and the beliefs he holds as a member of a particular religious group–Christianity.

However, the Court finds that Plaintiff cannot mount an equal protection claim because he has not properly alleged a similarly situated comparator, which is required whether Plaintiff is proceeding under a classic or class-of-one equal protection theory. Regarding possible comparators, Plaintiff pleads that "Defendants allowed numerous City employees similarly situated to Cochran—including Defendant Reed—to express a secular belief and viewpoint favorable to same-sex marriage and homosexual conduct." Cmpl., Dkt. No. [1] ¶ 329. Thus, Plaintiff contends that Defendant Reed and "numerous City employees" are similarly situated comparators.

First, the Court finds that Defendant Reed is not similarly situated to Plaintiff. As the Mayor, Reed is Plaintiff's superior. *Id.* ¶¶ 26–27. Plaintiff pleads that Reed is responsible for enforcing the City's policies and procedures, and that there is an unwritten policy that Reed's pre-clearance is required prior to book publications. *Id.* ¶¶ 26, 332. As the City's ultimate decision-maker, Reed could not be similarly situated to Plaintiff, who is subject to Reed's decision-making power. Reed is also not subject to Section 2–820(d) by its terms. Compl., Dkt. No. [1] ¶ 171. Moreover, Plaintiff has not pled that Reed has ever tried to publish a book on morality which was approved by the City or even that Reed is from a different religious group than Plaintiff. *Douglas Energy Relief Ass'n v. City of Douglas,* 556 Fed. Appx. 820, 822 (11th Cir.2014) ("To state a § 1983 equal protection claim, plaintiff Freeman must show that she is similarly situated to non-black persons who received more favorable treatment."). At bottom, the Court finds that Reed is too dissimilar to serve as a similarly situated comparator for numerous reasons. *Lofton v. Sec'y of Dep't of Children & Family Servs.,* 377 F.3d 1275, 1277 (11th Cir.2004) (noting that the Equal Protection Clause "simply keeps governmental decisionmakers from treating differently persons who are *in all relevant respects* alike.") (emphasis added).

The Court also finds that Plaintiff's general allegation that "numerous City employees" are similarly situated to Plaintiff without any factual support does not satisfy *Iqbal* or *Twombly.* Therefore, the Court **GRANTS** Defendants' Motion as to Count VI, Equal Protection.

### G. *Count VII: Fourteenth Amendment Right to Due Process: Vagueness*

 Plaintiff alleges that Defendants' policies, specifically Section 2–820(d), are unconstitutionally vague because "[e]mployees of common intelligence must guess and will differ in their views as to what expression will meet with Defendants' approval and be permitted under their policies...." Compl., Dkt. No. [1] ¶ 341. In relevant part, the Section 2–820(d) states:

> [D]epartment heads ... shall not engage in any private employment or render any services for private interests for remuneration, regardless of whether such employment or service is compatible with or adverse to the proper discharge of the official duties of such employee. However, the employees named in this paragraph may engage in private employment or render services for private interests only upon obtaining prior written approval from the board of ethics in accordance with this paragraph. The board of ethics shall review each request individually and provide written approval or disapproval of the notification within 30 days. All requests for approval of outside employment shall state the type and place of employment, the hours of work, and the employer's name and address. City employment shall remain the first priority of the employee, and if at any time the outside employment interferes with city job requirements or performance, the official or employee shall be required to modify the conditions of the outside employment or terminate either the outside employment or the city employment. This paragraph shall not apply to single speaking engagements or to participation in conferences or on professional panels; provided, however, that any expense reimbursements received for such engagements must be reported in accordance with section 2–815.

Compl., Dkt. No. [1] ¶ 171.

Defendants move to dismiss this claim, arguing that the Eleventh Circuit upheld a

nearly identical rule requiring prior written approval before engaging in outside employment, finding that it was not ambiguous. Defs.' Mot. to Dismiss, Dkt. No. [11] at 19–20 (citing *Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342 (11th Cir.2006)). In *Thaeter*, the Eleventh Circuit found that the Palm Beach County Sheriff's Office's ("PCBSO") off-duty employment screening provision was not unconstitutionally vague. That provision stated that PBCSO officers had to "obtain prior written approval from the Sheriff using the approved request form, *before* engaging in other employment, occupation, profession or commercial enterprise." 449 F.3d at 1354 (emphasis in original). The Eleventh Circuit noted that "[t]he rule is easily understood by persons of ordinary intelligence," and the fact that the deputies asked for their faces to be blurred out in the pornographic material which constituted their off-duty employment was evidence they understood this employment was in contravention of the off-duty employment rule. *Id.* Thus, the Court found the PCBSO's off-duty employment provision was not unconstitutionally vague or ambiguous.

Like *Thaeter*, this Court finds that Section 2–820(d) is not "obtuse or ambiguous," and the rule is "easily understood by persons of ordinary intelligence." *Id.; see also Colten v. Kentucky*, 407 U.S. 104, 110, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972) (explaining that, to avoid a vagueness challenge, a rule should comport with "a rough idea of fairness ... and [be] sufficiently specific to provide fair warning that certain kinds of conduct are prohibited."). Plainly, the ordinance requires pre-clearance before any department head can provide any "private employment or render any services for private interests for remuneration"—which would encompass publishing a book which is sold on Amazon.com. The Court also finds, taking the facts most favorable to Plaintiff, the fact Plaintiff called the City of Atlanta Ethics Officer suggests that even Plaintiff understood that authoring a book would require the City's preclearance. *See* Compl., Dkt. No. [1] ¶¶ 105–11.

In response, Plaintiff does not address *Thaeter* at all and instead argues that Section 2–820(d) is vague because it conflicts with the Supreme Court's holding in *NTEU*, 513 U.S. 454, 468, 115 S.Ct. 1003, 130 L.Ed.2d 964 (1995). There, the Court held that a statute prohibiting the receipt of honoraria by government employees imposed a significant burden on expressive activity in violation of the First Amendment. *Id.* at 469, 115 S.Ct. 1003. Plaintiff argues that the City's failure to draft Section 2–820(d) to exclude protected employee speech or impose limitations on its scope makes it unconstitutionally vague.

However, *NTEU* is not a vagueness case. Whether an ordinance may allegedly violate the First Amendment does not affect whether the ordinance, as written, is understandable and provides proper notice pursuant to the Fourteenth Amendment. Thus, the Court does not find *NTEU* persuasive or controlling this analysis and instead finds that *Thaeter* controls. Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss Count VII—Vagueness.

### H. Count VIII: Fourteenth Amendment Right to Due Process: Liberty Interest

In Count VIII, Plaintiff claims Defendants deprived him of his liberty interest in "working and earning a living and establishing a home and position in his community" by suspending him without pay and terminating his employment "in a highly publicized manner ... [which] stigmatized him and irretrievably damaged his reputation in the community." Compl.,

Dkt. No. [1] ¶¶ 347, 349. Plaintiff alleges the "nationwide media attention also rendered it impossible to pursue his common calling by finding and maintaining work in any fire department." *Id.* ¶ 350.

"Eleventh Circuit precedent is clear that a protected liberty interest is at stake if there is a stigmatizing allegation made in conjunction with a discharge." *Thomas v. Harvard,* 45 F.Supp.2d 1353, 1354 (N.D.Ga.1999). To show the deprivation of a liberty interest without due process of law, a Plaintiff must prove "(1) a false statement (2) of a stigmatizing nature (3) attending a governmental employee's discharge (4) made public (5) by the governmental employer (6) without a meaningful opportunity for employee name clearing." *Buxton v. City of Plant City,* 871 F.2d 1037, 1042–43 (11th Cir.1989).

Defendants argue that Plaintiff has not pled facts showing that "Defendants publicly made false statements of a stigmatizing nature attendant to his discharge without a meaningful opportunity for name clearing . . . ." Defs'. Mot. to Dismiss, Dkt. No. [11] at 21–22. Plaintiff responds that Defendants made several stigmatizing statements accusing Plaintiff of discriminating against homosexuals, citing Mayor Reed's public statements and Facebook comment. Pl.'s Resp. in Opp'n to Defs.' Mot. to Dismiss, Dkt. No. [15] at 29.

Plaintiff alleges in his Complaint that Mayor Reed made the following statements: (1) that he "was surprised and disappointed to learn of this book on Friday," Compl., Dkt. No. [1] ¶ 154; (2) "I profoundly disagree with and am deeply disturbed by the sentiments expressed in the paperback regarding the LGBT community," *id.* ¶ 157; (3) "I want to be clear that the material in Chief Cochran's book is not representative of my personal beliefs, and is inconsistent with the Administration's work to make Atlanta a more welcoming city for all of her citizens— regardless of their sexual orientation, gender, race and religious beliefs," *id.* ¶ 158; and (4) "[T]he contents of the book do not reflect the views of Mayor Reed or the Administration." *Id.* ¶ 159. At the hearing on Defendants' Motion to Dismiss, Plaintiff's counsel argued that these statements implied that Plaintiff was not being inclusive of homosexuals, which had a negative effect on his standing in the community and his ability to get another job. Plaintiff's counsel further clarified that accusing Plaintiff of violating the City's policy is stigmatizing, because *Thomas* is not limited to accusations of criminal behavior, and even an accusation of a drinking problem is enough. *See Dennis v. S & S Consol. Rural High Sch. Dist.,* 577 F.2d 338 (5th Cir.1978).

Accepting Plaintiff's allegations as true, as required on a motion to dismiss, the Court does not find that Mayor Reed's alleged statements were of a stigmatizing nature. While accusations of discrimination or violating City policy may be stigmatizing, Plaintiff does not plead facts showing he was accused of such conduct. In each alleged statement, Mayor Reed merely expresses his disagreement with the views written in Plaintiff's book. The alleged statements do not accuse Plaintiff of discriminatory *conduct* in violation of City policy, but note that "the material in [Plaintiff's] *book* . . . is inconsistent with the Administration's work to make Atlanta a more welcoming city . . . ." Compl., Dkt. No. [1] ¶ 158 (emphasis added). In fact, none of the alleged statements refer to Plaintiff's actions or his character; they refer only to disagreement with the views expressed in Plaintiff's book.

Because Plaintiff fails to plead an essential element of his claim, Defendants' Motion to Dismiss [11] is **GRANTED** with regard to Count VIII.

### I. Count IX: Fourteenth Amendment Right to Due Process: Procedure

Plaintiff alleges Defendants violated his right to procedural due process by suspending and terminating him without providing him advance notice of an adverse employment action or giving him a meaningful opportunity to respond, as required by City Ordinances. Compl., Dkt. No. [1] ¶¶ 357–60. Defendants move to dismiss this claim, arguing that Plaintiff was not entitled to any procedure because he was an at-will public employee with no property interest protected by the due process clause. Defs.' Mot. to Dismiss, Dkt. No. [11] at 22.

The Fourteenth Amendment protects against the government's deprivation of liberty or property without procedural due process. *Bd. of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire ... [or] unilateral expectation of it." *Id.* at 577, 92 S.Ct. 2701. Rather, property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.*

■ Under Georgia law, "a public employee has a property interest in employment when that employee can be fired only for cause." *Wilson v. City of Sardis*, 264 Ga.App. 178, 590 S.E.2d 383, 385 (Ga.Ct.

App.2003); *Warren v. Crawford*, 927 F.2d 559, 562 (11th Cir.1991) (applying Georgia law). However, absent "a contractual or statutory 'for cause' requirement" the employee may be terminated at any time, for any reason. *Wilson*, 264 Ga.App. 178, 590 S.E.2d at 385.

■ Plaintiff contends that he has a property interest in his employment because City Ordinance Section 114–528 provides that no employee may be terminated or otherwise adversely affected except for cause.[8] Compl., Dkt. No. [1] ¶ 355. Notably, the definition of "employee" in Section 114–76, which applies to Section 114–528, is broadly defined and includes "any person holding a position or employment with the city."

Defendant argues that Plaintiff, as a department head, is an "unclassified employee," and that the "progressive discipline" process, outlined in Sections 114526 through 532, pertains only to "classified employees." Defs. Mot. to Dismiss, Dkt. No. [11] at 11 n.45 (citing Atl., Ga.Code of Ordinances §§ 3–501(a) (dividing City's civil service system into classified and unclassified service), 114–84(b)(7) (providing that department heads are unclassified), 114–546(1) (limiting appeal rights to classified employees), and 114–78 (limiting application of Article IV to classified employees)).

In his response brief, Plaintiff again relies on the language in Section 114528 that "[n]o employee shall be dismissed from employment ... except for cause." Pl.'s

---

**8.** Sec. 114–528 states in relevant part, "No employee shall be dismissed from employment or otherwise adversely affected as to compensation or employment status except for cause. However, this shall not apply to employees dismissed or otherwise adversely affected due to curtailment of funds or reduction in staff or reorganization or demoted during a probationary period such that the employee is returned to the position held immediately prior to promotion when such action is in accordance with article IV of this chapter." Atl. Ord. *available at* https://www.municode.com/library/ga/atlanta/codes/code_of_ordinances?nod eId=COORATGEVOIL_CH114PE_ARTVILARE_DIV3DIAC_S114–528CAAC (last visited Dec. 14, 2015).

Resp. to Defs.' Mot. to Dismiss, Dkt. No. [15] at 30. Plaintiff does not respond to Defendants' argument that the progressive discipline sections, including Section 114–528, apply only to classified employees. *Id.*

At the hearing on this matter, Plaintiff's counsel argued that Section 114528 is not limited to classified employees. Counsel noted that Section 114–78, which Defendants cite as limiting Section 114–528 to classified service, actually provides that "[t]his article shall apply to all positions in the classified civil service." He argued that the article Section 114–78 refers to is Article IV of the Personnel chapter (or the Civil Service Article), whereas Section 114–528 is located in Article VI of that chapter (or the Labor Relations Article). Thus, Plaintiff contends Section 114–528 includes all City employees, regardless of civil service status. Defendants did not respond to this argument at the hearing or in their supplemental brief.

Plaintiff is correct that Section 114–78 does not limit Section 114–528 to classified civil service. Because the ordinances Defendants cite in their briefs do not establish that Plaintiff lacks a property interest in his employment, the Court cannot dismiss Plaintiff's procedural due process claim at this time.

Because Defendants have failed to meet their burden, their Motion to Dismiss [11] is **DENIED** with regard to Count IX.

### J. Mayor Reed's Assertion of Qualified Immunity

Defendants finally move to dismiss Counts I, II, and IV against Mayor Reed, arguing that he is entitled to qualified immunity.[9]

#### 1. Legal Standard

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir.2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)). In order to receive qualified immunity, "a government official first must prove that he was acting within his discretionary authority." *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir.2003). The burden then shifts to the plaintiff to show that the defendant is not entitled to qualified immunity. *Id.* at 1358.

Defendants contend that all alleged actions by Mayor Reed were performed within the scope of his discretionary authority. Defs.' Mot. to Dismiss, Dkt. No. [11] at 24. Plaintiff does not dispute this contention.

To determine whether a defendant is entitled to qualified immunity, the Court must engage in a two-prong inquiry. *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). One, the Court must determine "whether plaintiff's allegations, if true, establish a constitutional violation." *Hope*, 536 U.S. at 736, 122 S.Ct. 2508. Two, the Court must determine whether the constitutional right at issue "was clearly established at the time of the alleged violation." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir.2004). For a

---

**9.** Defendants purport to dismiss "all claims" against Defendant Reed, but their sole assertion for qualified immunity is that Defendant Reed would not have known the City's interest did not outweigh the Plaintiff's interest— that is, that Reed did not know the City could not survive *Pickering*. Because this is their sole argument, the Court finds that they have only moved to dismiss the counts to which *Pickering* applies—Counts I, II, and IV.

right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, ‒‒‒ U.S. ‒‒‒, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S.Ct. 2074, 2083, 179 L.Ed.2d 1149 (2011)). "[I]f reasonable public officials could differ on the lawfulness of a defendant's actions, the defendant is entitled to qualified immunity." *Akins v. Fulton Cty., Ga.*, 420 F.3d 1293, 1305 (11th Cir. 2005) (quoting *Storck v. City of Coral Springs*, 354 F.3d 1307, 1314 (11th Cir. 2003)). However, a party need not cite cases with materially similar facts to show the law is clearly established. *Id.* Instead, a plaintiff must show that the law at the time of the allegedly unconstitutional act was "established sufficiently to give fair warning to the official that his conduct is unlawful." *Id.*

### 2. Discussion

■ Defendants' sole argument on qualified immunity is that "when balancing the interests of a public employee's federal rights against the governmental employer's interest in maintaining efficient and orderly provision of services to the public, 'only in the rarest of cases will reasonable governmental officials truly know that the termination or discipline of a public employee violated 'clearly established rights.'" Defs. Mot. to Dismiss, Dkt. No. [11] at 24–25 (quoting *Anderson v. Burke Cnty.*, 239 F.3d 1216, 1222 (11th Cir.2001)).

Plaintiff retorts that his rights to free speech and free association are vindicated in *Cook*, where the Eleventh Circuit held that "'a public employer may not retaliate against an employee for an employee's exercise of constitutionally protected speech,' infringe their 'First Amendment right to engage in associative activity,' or 'engage in viewpoint discrimination.'" Pl.'s Resp.

to Defs.' Mot. to Dismiss, Dkt. No. [15] at 32 (quoting *Cook*, 414 F.3d at 1313, 1318). Plaintiff also argues that the Supreme Court made it clear in *NTEU* that a government employee cannot be prohibited from publishing and distributing written works for compensation. Pl.'s Resp. to Defs.' Mot. to Dismiss, Dkt. No. [15] at 32 (citing *NTEU*, 513 U.S. at 468–69, 115 S.Ct. 1003).

In *Cook*, the Eleventh Circuit affirmed the district court's denial of qualified immunity. 414 F.3d at 1315. The court found that school district officials violated a school bus driver's clearly established rights to free speech and free association by taking adverse employment action against her in retaliation for her involvement with a union-like organization promoting the safety of school children through well-trained school employees. *Id.* Applying the Pickering balancing test, the court determined that the bus driver's "interests in promoting safety and improving the competency, management, and organization of district bus drivers far outweighed the scant evidence that the district proffered in support of its workplace efficiency argument." *Id.* at 1320.

The Eleventh Circuit also addressed the issue of qualified immunity in the context of a public employee's First Amendment rights in *Busby v. City of Orlando* 931 F.2d 764, 773–75 (11th Cir.1991). There, the Court explained:

The Supreme Court has never established a bright-line test for determining when a public employee may be disciplined in response to that employee's speech. Instead, *Pickering* established a case-by-case balancing of interests test. Although "a State cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expres-

sion," an employee's interest as a citizen in commenting on matters of public concern must be balanced against the state's interest as an employer "in promoting the efficiency of the public services it performs through its employees." Because no bright-line standard exists to put the employer on notice of a constitutional violation, this circuit has recognized that a public employer is entitled to immunity from suit unless the *Pickering* balance "would lead to the inevitable conclusion that the discharge of the employee was unlawful." Accordingly, this court need not decide the precise result of applying the *Pickering* balancing test to Busby. Instead, we need only decide whether such a result would be so evidently in favor of protecting the employee's right to speak that reasonable officials in appellees' place "would necessarily know that the termination of [Busby] under these circumstances violated [Busby's] constitutional rights."

*Busby*, 931 F.2d at 773–74 (internal citations omitted) (alterations in orginal).

As Plaintiff explains, the denial of qualified immunity in *Cook* was based on the fact that "there was no evidence that [the plaintiff's] speech caused a disruption." Pl.'s Resp. to Defs.' Mot. to Dismiss, Dkt. No. [15] at 32. Here, Plaintiff alleges facts which suggest the views expressed in his book caused a disruption *from the perspective of the AFRD, City Council, and City leadership. See* Compl., Dkt. No. [1] ¶¶ 139–44, 154, 157–59, 167 (describing an AFRD employee showing Plaintiff's book to Councilmember Wan, Councilmember Wan bringing the book to the attention of City leaders, City leaders holding a meeting with Mayor Reed regarding Plaintiff's book, and Mayor Reed and Councilmember Wan issuing public statements regarding Plaintiff's book).

Plaintiff also alleges Mayor Reed issued a statement regarding Plaintiff's termination in which he expressed his view that the material in Plaintiff's book "is inconsistent with the Administration's work to make Atlanta a more welcoming city for all of her citizens." *Id.* ¶ 158. This view of Plaintiff's speech introduces a distinct element not present in *Cook* or *NTEU*: public employee speech inconsistent with (at least in the defendant's view) the government entity's policies and practices. The Court does not now decide whether these distinctions ultimately bear on the constitutional analysis, but the distinctions do create uncertainty as to whether Mayor Reed's alleged actions were unlawful. Because it is not clear to the Court in whose favor a *Pickering* balancing test would weigh based on the facts alleged, it cannot be said that Plaintiff's rights were "clearly established."

In other words, while the Court cannot say as a matter of law at this stage of the proceeding that the *Pickering* test was not violated, *see supra*, the Court can say that Plaintiff has not shown the Defendants would "necessarily know" that *Pickering* was violated as required to *Cook* and *Busby.* Accordingly, Defendants' Motion to Dismiss is **GRANTED** with regard to Counts I, II, and IV against Mayor Reed.

## IV. *Conclusion*

Defendants City of Atlanta and Mayor Kasim Reed's Motion to Dismiss [11] is **GRANTED IN PART** and **DENIED IN PART.**

Defendants' Motion is **GRANTED** as to both Defendants on Plaintiff's claims based upon the Establishment Clause (Count V); Equal Protection (Count VI); Due Process: Vagueness (Count VII); and Due Process: Liberty Interest (Count VIII). Defendants' Motion is also **GRANTED** as to Defendant Reed only with regarding to

Plaintiffs' claims based upon Retaliation (Count I), Viewpoint Discrimination, Overbreadth, Prior Restraint, Unbridled Discretion, and Unconstitutional Conditions (Count II), and Freedom of Association (Count IV). Defendants' Motion is **DENIED** as to the remaining Counts.

Plaintiff is provided leave to amend his Establishment Clause claim, Count V, within 14 days of this Order. Defendants may then file a Motion to Dismiss which addresses solely this claim following the amendment. Failure to timely file an amended complaint on this issue will bar Plaintiff from asserting his Establishment Clause claim going forward.

**IT IS SO ORDERED** this 16th day of December, 2015.