[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-10984
Non-Argument Calendar

_____

D.C. Docket No. 2:10-cv-03643-KOB

LANCE B. KOURY,

Plaintiff-Appellant,

versus

SECRETARY, DEPARTMENT OF
THE ARMY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(August 16, 2012)

Before CARNES, MARCUS and KRAVITCH, Circuit Judges.

PER CURIAM:

Lieutenant Colonel Lance Koury, a member of the Alabama National Guard

and a dual-status technician at Army Aviation Support Facility Number 2 ("AASF")

in Birmingham, Alabama, appeals the district court's grant of the Department of Army's ("Department") motion to dismiss Koury's Title VII discrimination and retaliation claims for want of subject-matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). Koury alleged that his superior, Colonel Anthony Bonasera, discriminated against him based upon his race and national origin -- Koury is of Arab-Lebanese descent --when Bonasera twice denied him a promotion to the position of Facilities Commander at AASF. Koury also alleged that the Department retaliated against him by reassigning him to the position of safety officer after he filed a complaint with the Equal Opportunity Employment Commission regarding Bonasera's alleged comments that he "hated Muslims." On appeal, Koury argues that the district court erred by dismissing his claims because his claims did not arise from conduct incident to his military service, but arose, instead, from the civilian aspects of his employment. After thorough review, we affirm.

We review <u>de novo</u> the district court's legal conclusions in its resolution of a Rule 12(b)(1) motion to dismiss for want of subject-matter jurisdiction. <u>See</u> <u>McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.</u>, 501 F.3d 1244, 1250 (11th Cir. 2007). A Rule 12(b)(1) motion may be based upon either a facial or a factual challenge to the complaint. <u>Id.</u> at 1251. If the defendant raises a facial attack, the district court may only look to see if the plaintiff has sufficiently alleged a basis

of subject-matter jurisdiction, taking the facts alleged as true. See id. Factual attacks, on the other hand, challenge the existence of subject-matter jurisdiction in fact, and the district court may consider matters outside of the pleadings. Id. In such an instance, the district court may dismiss based on the complaint, either alone, or supplemented by undisputed facts, its resolution of disputed facts, or both. See id.

The Secretary of the Army may employ technicians to organize, administer, instruct, or train the National Guard; maintain and repair supplies issued to the National Guard; support operations, missions, or training undertaken by the technician's unit; or participate in the instruction or training of military and defense personnel. 32 U.S.C. § 709(a). Unless otherwise authorized, such a technician must be a dual-status technician, be a member of the National Guard, hold the required military grade, and wear the appropriate military uniform while performing his duties. Id. § 709(b). Although dual-status technicians are civilian employees of the Department of the Army and the United States, 10 U.S.C. § 10216(a)(2); 32 U.S.C. § 709(e), a dual-status technician must be separated from his employment if he is separated from the National Guard or ceases to hold the required military grade, 32 U.S.C. § 709(f)(1)(A).

Title VII prohibits employers from discriminating against an employee on the basis of his race or national origin, as well as retaliating against an employee because

he opposed an unlawful employment practice.  42 U.S.C. §§ 2000e-2(a), 2000e-3(a). All personnel actions affecting employees in military departments, including the Department of the Army, must be made free of any discrimination based upon race or national origin.  See id. § 2000e-16(a); 5 U.S.C. § 102.

In Feres v. United States, 340 U.S. 135 (1950), the U.S. Supreme Court held that the government is not liable for claims under the Federal Tort Claims Act made by military servicemen where their injuries arose out of, or were incurred in the course of, activity incident to service.  Id. at 146.  It expanded this "Feres doctrine" in Chappell v. Wallace, and held that enlisted military personnel could not maintain a "Bivens-type" suit against superior officers for damages due to alleged racial discrimination in violation of one's constitutional rights.  462 U.S. 296, 304-05 (1983).  The Court concluded that "special factors" precluded relief in such instances, as the "peculiar and special" relationship between soldier and superior, the need for discipline in the armed forces, and Congress's constitutional control over the rights, duties, and responsibilities of those in the military establishment all counseled that courts should not interfere in military matters.  See id. at 298-304.  It subsequently reaffirmed Chappell's reasoning, and held that the Feres doctrine barred Bivens claims for injuries that arose out of, or were incurred in the course of, activity incident

4

to service regardless of whether an officer-subordinate relationship existed. United States v. Stanley, 483 U.S. 669, 683-84 (1987).

We apply a three-part test in order to determine whether an injury is incident to service so as to be non-justiciable under the Feres doctrine. See Speigner v. Alexander, 248 F.3d 1292, 1298 (11th Cir. 2001). Under this test, we consider: (1) the service member's duty status; (2) the place where the injury occurred; and (3) the service member's activities at the time of the injury. Id. The purpose of this test is to separate cases that may interfere with military discipline and command decisions from those that do not, id., and courts must pay particular attention to whether the service member's claims will implicate civilian courts in conflicts involving the military structure or decisions, Pierce v. United States, 813 F.2d 349, 352 (11th Cir. 1987). Thus, in Speigner, we concluded that a serviceman's claims that he was terminated by the Alabama National Guard because of racial bias were incident to his military service where he was an active-duty Guardsman, and his termination took place at a formal review and as a consequence of that review. 248 F.3d at 1293-94, 1298. Accordingly, we held that the serviceman's civil rights claims were barred by the Feres doctrine, as our involvement in determining which officers were competent to serve would interfere in military matters in the manner that Feres and its progeny precluded. Id. at 1298.

5

In this case, although Koury's employment as a dual-status technician had both civilian and military aspects, the injuries he alleged arose out of activity incident to his military service. As for his duty status, Koury was a Lieutenant Colonel in the Alabama National Guard, and had to wear his uniform while performing his duties. See 32 U.S.C. § 709(b). In addition, Koury had to comply with the military's ranking hierarchy, a fact he relied upon when he explained why he had failed to challenge Bonasera about his alleged comments regarding his hatred of Muslims. As for the place of injury, Koury was employed at AASF in Birmingham, Alabama, a military base, and both the Facilities Commander and safety officer positions were located there as well.

The activities in which Koury was engaged at the time of his injuries were also military in nature. In his role as an operations officer, Koury supervised or otherwise performed a number of military-related duties concerning instructor pilots, operations personnel, and aviation safety personnel. Likewise, he sought a promotion to Facilities Commander, which would have required him to manage AASF's military aircrew and various aspects of the operation of military aircraft, ensure the training and readiness of all aircrew and aircraft for war, and promote their safety.

Moreover, Koury's claims arose out of Bonasera's judgment concerning who would best fill the military's needs, the very type of decision with which this Court

has not interfered.  See Speigner, 248 F.3d at 1298.  Given the relationship of a dual-status technician -- and of Koury specifically -- to the military's operations and objectives, interference in this case would implicate civilian courts in conflicts involving military structure and decisions.  See 10 U.S.C. § 10216(a)(3); 32 U.S.C. § 709(a); Speigner, 248 F.3d at 1298; Pierce, 813 F.2d at 352; Overton v. N.Y. State Div. of Military & Naval Affairs, 373 F.3d 83, 92, 96-97 (2d Cir. 2004) (noting that a dual-status technician's employment as a civilian is ordinarily in support of a mission that is ultimately military in nature, and concluding that the Feres doctrine, therefore, bars claims brought by dual-status technicians under Title VII) (persuasive authority).  Thus, we conclude that Koury's injuries arose from conduct incident to his military service.

Because Koury's injuries arose from conduct incident to his military service, the Feres doctrine renders his claims non-justiciable.  See Speigner, 248 F.3d at 1298.  Accordingly, the district court properly dismissed Koury's claims, and we affirm.

**AFFIRMED.**

7